[Cite as *Grybosky v. Civil Rights Comm.*, 2017-Ohio-7125.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| HELEN GRYBOSKY, et al., | : | **O P I N I O N** |
| Appellant, | : | |
| - vs - | : | **CASE NO. 2016-A-0062** |
| OHIO CIVIL RIGHTS COMMISSION, et al., | : | |
| | : | |
| Appellees. | | |

Appeal from the Ashtabula County Court of Common Pleas, Case No. 2013 CV 00823.

Judgment: Reversed and judgment entered for appellant.

*Tarin S. Hale*, 6085 Waterloo Road, Centerville, OH 45459 (For Appellant).

*Mike DeWine*, Ohio Attorney General, State Office Tower, 30 East Broad Street, 16th Floor, Columbus, OH 43215-3428, *Marilyn Tobocman*, Assistant Attorney General, and *Sharon D. Tassie*, Assistant Attorney General, State Office Building, 12th Floor, 615 West Superior Avenue, Cleveland, OH 44113 (For Appellees).

THOMAS R. WRIGHT, J.

{¶1} Appellant,[1] Helen Grybosky, appeals the trial court's decision modifying in part, and affirming in part the Ohio Civil Rights Commission decision that Helen committed discriminatory practices. We reverse the trial court's decision to the extent it

---

1. Helen's son, Gary Grybosky, is not a party to the appeal. He was dismissed as a party by the trial court, and this ruling was not appealed.

affirmed the commission's decision and dismiss the commission's discrimination determination against Helen in its entirety.

{¶2} In September 2008, Helen and Gary Grybosky received two letters notifying them of housing discrimination charges relating to a rental property they owned and managed in Conneaut, Ohio. The facts resulting in the charges are spelled out in a related appeal arising from Grybosky's declaratory judgment action and civil rights claims against certain Ohio Civil Rights Commission employees and the Ohio Attorney General. *Grybosky v. Ohio Civil Rights Commission*, 11th Dist. Ashtabula No. 2010-A-0047, 2011-Ohio-6843, ¶ 4-8.

{¶3} Following a hearing, the Administrative Law Judge found Helen and Gary Grybosky's practices regarding households with children and regarding people with disabilities violated R.C. 4112.02(H). Upon review of the ALJ's decision, the commission adopted the ALJ's liability report and recommendations, but modified its damages recommendation. The commission ordered the Gryboskys to cease and desist from all discriminatory practices and ordered them to pay the complainant's actual out-of-pocket damages, the attorney general's attorney fees and travel costs, and the attorney fees and travel costs incurred by the complainant, the Fair Housing Resource Center (FHRC). The Gryboskys were also order to complete no less than four hours of training on Ohio's anti-discriminatory fair housing laws.

{¶4} The Gryboskys appealed to the Ashtabula County Court of Common Pleas, and the court of common pleas modified the decision of the Civil Rights Commission in part and affirmed it in part. It dismissed the commission's decision against Gary in its entirety. Helen asserts four assigned errors on appeal:

2

{¶5} "[1.] The trial court committed prejudicial error in failing to dismiss all charges against Appellant/Respondent for the reason that the charging instruments were not under oath as required by ORC 4112.05(B)(1) as a jurisdictional prerequisite.

{¶6} "[2.] The trial court committed prejudicial error in concluding that the Civil Rights Commission made a sufficient effort to eliminate the alleged unlawful discriminatory practice by informal methods of conference, conciliation and persuasion as required by R.C. 4112.05(B)(5) before filing a formal complaint.

{¶7} "[3.] The trial court committed prejudicial error in finding that FHRC sustained any actual damages sufficient to provide standing to pursue the charges in this case and the resulting award of actual damages to FHRC and attorney fees to the Ohio Attorney General.

{¶8} "[4.] The trial court committed prejudicial error in finding that the Ohio fair housing statutes, ORC 4112 et al, are constitutional on their face and as applied to Appellant/Respondent and all other landlords."

{¶9} Helen first argues that all charges against her should be dismissed because the charging instruments were not under oath as required by R.C. 4112.05(B)(1). The original charging documents were submitted on U.S. Department of Housing and Urban Development complaint forms that included a preprinted declaration stating, "I declare under penalty of perjury that I have read this complaint (including any attachments) and that it is true and correct" next to the signature line, which were signed by Patricia Kidd on August 30, 2008. The forms do not include a statement that the complaint or charges therein were made under oath or that Kidd had been sworn and subscribed and that she swore to the truth of the matters asserted.

3

{¶10} Helen argues here, as she did to the commission and trial court, that the Ohio Civil Rights Commission lacked jurisdiction to hear the disability claims against her because the charging documents do not satisfy the R.C. 4112.05(B)(1) oath requirement.

{¶11} The trial court considered this issue and held that the oath requirement is not a jurisdictional prerequisite to the commission's jurisdiction over cases alleging housing discrimination under R.C. 4112.02(H). We disagree and find that a plain reading of R.C. 4112.05 dictates the results.

{¶12} The applicable version of R.C. 4112.05(B)(1) states in part:

{¶13} "Any person may file a charge with the commission alleging that another person has engaged or is engaging in an unlawful discriminatory practice. * * * In the case of a charge alleging an unlawful discriminatory practice described in division (H) of section 4112.02 of the Revised Code, *the charge shall be in writing and under oath* and shall be filed with the commission within one year after the alleged unlawful discriminatory practice was committed." (Emphasis added.) R.C. 4112.09 provides for who may administer the requisite oaths, and states:

{¶14} "The executive director, administrative law judge, compliance officer, each field investigator, field coordinator, mediator, regional director, and supervisor of the Ohio civil rights commission, and any person appointed and commissioned as a notary public in this state, with respect to matters relating to official duties, may administer oaths, take affidavits, and acknowledgements, and attest the execution of any instrument in writing."

4

{¶15} In opposition, appellees first argue that the proceedings against the Gryboskys were not subject to the oath requirement because the charges against them arose via the commission's independent investigation under R.C. 4112.05(B)(2), which is not subject to the oath requirement. We disagree. The applicable version of R.C. 4112.05(B)(2) states in part:

{¶16} "The commission also may conduct, upon its own initiative and *independent of the filing of any charges*, a preliminary investigation relating to any of the unlawful discriminatory practices described in division (A), (B), (C), (D), (E), (F), (I), or (J) of section 4112.02 or in section 4112.021 or 4112.022 of the Revised Code." (Emphasis added.) R.C. 4112.05(B)(2) does not apply to housing discrimination claims because these claims are identified in R.C. 4112.02(H), and subsection H is conspicuously absent from R.C. 4112.05(B)(2).

{¶17} Notwithstanding, appellees claim that its charges against the Gryboskys satisfy the applicable section of the Ohio Administrative Code, i.e., Ohio Adm. Code 4112-3-01(B)(2), and that its noncompliance with the oath requirement in R.C. 4112.05(B)(1) is a technicality that is not jurisdictional.

{¶18} As appellees contend, Ohio Adm. Code 4112-3-01(B)(2) does not require the charges to be made under oath and instead only requires that housing discrimination charges shall be "signed and affirmed by the complainant" and state, "I declare under penalty of perjury that the foregoing is true and correct."

{¶19} "Administrative rules are designed to accomplish the ends sought by the legislation that has been enacted by the General Assembly. *State ex rel. Am. Legion Post 25 v. Ohio Civ. Rights Comm.,* 117 Ohio St.3d 441, 2008-Ohio-1261, 884 N.E.2d

5

589, ¶ 14, citing *Carroll v. Dept. of Adm. Serv.,* 10 Ohio App.3d 108, 110, 460 N.E.2d 704 (10th Dist.1983). Therefore, '[r]ules promulgated by administrative agencies are valid and enforceable unless unreasonable or in conflict with statutory enactments covering the same subject matter.' *Am. Legion Post 25* at *id.,* citing *State ex rel. Curry v. Indus. Comm.,* 58 Ohio St.2d 268, 269, 389 N.E.2d 1126 (1979). The commission is authorized to adopt rules to implement the provisions of R.C. Chapter 4112. *Am. Legion Post 25* at *id.* However, **an administrative rule may not add to or subtract from a legislative enactment.** *Cent. Ohio Joint Vocational School Dist. Bd. of Edn. v. Ohio Bur. of Emp. Serv.,* 21 Ohio St.3d 5, 10, 487 N.E.2d 288 (1986). **If it does, the rule clearly conflicts with the statute, and the rule is invalid.** *Am. Legion* at *id.,* citing *Cent. Ohio."* GMS Mgt. Co, Inc. v. Ohio Civ. Rights Comm.,* 2016-Ohio-7486, 64 N.E.3d 1025, ¶ 16 (8th Dist.) (Emphasis added.)

**{¶20}** Here, the administrative rule stating that a housing discrimination charge can be made via a statement that the charges were made under the penalty of perjury subtracts from the governing Revised Code section requiring that the charge "shall" be made in writing "under oath." Thus, the requirement set forth in the Ohio Revised Code governs since the applicable OAC regulation conflicts.

**{¶21}** In *Powell v. Ohio Civil Rights Commission*, 51 Ohio App.2d 197, 367 N.E.2d 896, 897 (10th Dist.1976), the 10th District strictly construed R.C. 4112.05(B)(1) and found the oath requirement jurisdictional. It held that the filing of a photocopy of a complaint signed under oath was insufficient to confer jurisdiction upon the OCRC. *Id.*

**{¶22}** Moreover, in *State ex rel Republic Steel Corp., v. Ohio Civil Rights Commission*, 44 Ohio St.2d 178, 339 N.E.2d 658 (1975), the Supreme Court held that

6

the Ohio Civil Rights Commission lacked jurisdiction to investigate unlawful discriminatory practices when another requirement in R.C. 4112.05 was not satisfied.  It held the commission lacked jurisdiction to issue a complaint because it had not completed the jurisdiction prerequisite, i.e., it did not attempt to eliminate the discriminatory practice via conference, conciliation, or persuasion.  *Id.* at 184.

**{¶23}** Upon considering the precise issue before us, the Eighth District in *GMS*, supra, set forth the following analysis explaining the difference between an oath and a statement made subject to the penalty of perjury:

**{¶24}** "Black's Law Dictionary defines an 'oath' as follows:

**{¶25}** "1. A solemn declaration, accompanied by a swearing to God or a revered person or thing, that one's statement is true or that one will be bound to a promise.  The person making the oath implicitly invites punishment if the statement is untrue or the promise is broken.  The legal effect of an oath is to subject the person to penalties for perjury if the testimony is false * * * 2. A statement promise made by such a declaration. 3. A form of words used for such a declaration.  4. A formal declaration made solemn without a swearing to God or a revered person or thing.

**{¶26}** *"Black's Law Dictionary* (9th Ed.2009).

**{¶27}** "It defines an 'affirmation' as '[a] solemn pledge equivalent to an oath but without reference to a supreme being or to swearing; a solemn declaration made under penalty of perjury, but without an oath.'  *Id.*  While an oath is 'sworn to,' an affirmation is merely 'affirmed'; but either type of pledge may subject the person making it to the penalties for perjury. *Id.*

{¶28} "The Ohio Supreme Court has held that an unsworn written statement that is signed under penalty of perjury may not be substituted for a sworn affidavit. *Toledo Bar Assn. v. Neller,* 102 Ohio St.3d 1234, 2004-Ohio-2895, 809 N.E.2d 1152, ¶ 1. In *Neller,* a disbarred attorney sent to the clerk of the Ohio Supreme Court a signed document in which the attorney 'state[d] and declare[d] under the penalties of perjury' that his statements in the documents were 'true and correct.' *Id.* at ¶ 7. The court found that a strict and traditional reading of the term 'affidavit,' was consistent with the court's 'longstanding insistence that only a written declaration made under oath before a proper officer qualifies as an "affidavit."' *Id.* at ¶24." *GMS Mgt. Co, Inc., supra,* at ¶19-21.

{¶29} In *In re Disqualification of Donnelly*, 134 Ohio St.3d 1221, 2011-Ohio-7080, 982 N.E.2d 713, the Supreme Court dismissed a case seeking to disqualify a judge based on an "affidavit" of disqualification since the document was only signed under penalty of perjury. The court explained that the two are not interchangeable and that an "unsworn written statement that are signed under penalty of perjury cannot be substituted for affidavits" that must be confirmed by oath or affirmation before a person authorized to administer oaths or affirmations. *Id.* at ¶3; *see also State v. Clark*, 7th Dist. Mahoning No. 06MA26, 2007-Ohio-2707, 2007 WL 1589493, ¶17-19 (holding that statements made under penalty of perjury are insufficient to satisfy the affidavit requirement since they were not sworn statements.)

{¶30} Notwithstanding the distinction between an oath and the lesser requirement of a statement made under penalty of perjury, the Eighth District in *GMS, supra*, concluded that the statement made under penalty of perjury before it was nevertheless sufficient to invoke the commission's jurisdiction for discrimination

8

charges. However, the cases relied on by *GMS* are not compelling because they do not address whether the filing of a discrimination charge under penalty of perjury only satisfies R.C. 4112.05 and invokes the jurisdiction of the Ohio Civil Rights Commission.

{¶31} *GMS* relies on *Baker v. Siemens Energy & Automation, Inc.,* 820 F.Supp. 1050, 1057 (S.D.Ohio 1993). In *Baker*, the court was considering an appeal from an award of summary judgment and construing the facts in a light most favorable to the nonmoving party. It found the plaintiff was able to pursue his federal age discrimination claim and that he had essentially met the statutory prerequisite and filed a charge with the OCRC even though the letter he sent was not under oath. *Baker* explains that under federal law, a plaintiff cannot file a complaint under the ADEA until sixty days after he has filed state administrative proceedings. *Id.* at 1057. The purpose of this sixty-day requirement is to provide the state agency an opportunity to remedy the dispute. *Id.*

{¶32} *Baker* does not hold that the plaintiff sufficiently invoked the jurisdiction of the OCRC. *Id.* Instead, *Baker* acknowledges that R.C. 4112.05(B) requires a state charge to be made under oath, but it nevertheless found that the plaintiff had sufficiently initiated state administrative proceedings for purposes of pursuing an ADEA claim, and as such, summary judgment on the federal claims was not warranted. *Id.*

{¶33} Both *Baker* and the Eighth District in *GMS, supra,* rely on *Ackman v. Ohio Knife Co.*, 589 F.Supp. 768 (S.D.Ohio 1984), which similarly held that the plaintiff there satisfied the prerequisite for filing a state administrative claim for EEOC purposes. Like *Baker*, *Ackman* considered an argument that it lacked jurisdiction to hear the federal

9

claim based on the plaintiff's alleged failure to first pursue his claim under state law consistent with 29 U.S.C.A. 633(b), which states in part:

**{¶34}** "(b) Limitation of Federal action upon commencement of State proceedings

**{¶35}** "In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated: * * * *If any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority.*" (Emphasis added.)

**{¶36}** The *Ackman* court applied 29 U.S.C. 633(b) and held that regardless of whether a plaintiff properly invoked the jurisdiction of the Ohio Civil Rights Commission and complied with the "niceties" of state law, "a letter to the OCRC accompanied by a copy of an EEOC charge constitutes commencement of state proceedings for purposes of the ADEA." *Ackman, supra*, 770.

**{¶37}** Thus, we disagree with the Eighth District's decision in *GMS, supra*, which is based on cases that did not determine or discuss the issue before us. Moreover, the

analysis in *GMS* was not determinative since the oath deficiency had been remedied. *GMS Mgt. Co, Inc.,* at ¶18, 20.

{¶38}  Appellees also allege that the oath requirement is not jurisdictional and that the long-standing "relaxation" of the oath requirement was recently codified in R.C. 4112.05(B)(1)(a), which although relevant, is inapplicable here.  We disagree.  The recently enacted version effective April 6, 2017, states in part: "(a) An oath under this chapter may be made in any form of affirmation the person deems binding on the person's conscience. Acceptable forms include, but are not limited to, declarations made under penalty of perjury."

{¶39}  The legislature's recent amendment to the statute broadening the oath requirement to include statements made under penalty of perjury only bolsters our conclusion that the applicable version of R.C. 4112.05(B) governing the charges against Helen were required to be made under oath requiring an affirmative statement made and sworn to God or to be true before a person authorized to administer oaths or affirmations.

{¶40}  Because the charges against Helen did not satisfy the oath requirement in R.C. 4112.05(B)(1), the Commission lacked jurisdiction to proceed.  *Powell v. Ohio Civil Rights Commission,* 51 Ohio App.2d 197, 201, 367 N.E.2d 896 (10th Dist.1976) (finding that only the original writing signed and sworn under oath satisfies R.C. 4112.05(B).) Thus, the conflicting administrative code regulation is invalid.  *Cent. Ohio Joint Vocational School Dist. Bd. of Educ. v. Admr., Ohio Bur. of Emp. Services*, 21 Ohio St.3d 5, 487 N.E.2d 288, 289 (1986) (finding sections of the Ohio Administrative Code in conflict with the Revised Code invalid.); *Hoffman v. State Med. Bd. of Ohio*, 113 Ohio

11

St.3d 376, 2007-Ohio-2201, 865 N.E.2d 1259, ¶1 (2007) (finding Ohio Administrative Code regulation invalid because the administrative rule conflicts with the statute.)

**{¶41}** Based on the foregoing, Helen's first assigned error has merit, and her remaining assigned errors are moot. App.R. 12(A)(1)(c).

**{¶42}** We reverse the trial court's decision to the extent it affirmed the commission's decision and dismiss the discrimination determination against Helen in its entirety.


TIMOTHY P. CANNON, J.,

DIANE V. GRENDELL, J.,

concur.